**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

TROY G. SNOWDEN,

        Plaintiff,

v.                                       No. CV 17-232 CG

NANCY A. BERRYHILL,
Acting Commissioner of Social Security
Administration,

        Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

    **THIS MATTER** is before the Court on Plaintiff Troy G. Snowden's *Motion to Reverse and Remand for a Rehearing with Supporting Memorandum* (the "Motion"), (Doc. 14), filed August 28, 2017; Defendant Commissioner Nancy A. Berryhill's *Response to Plaintiff's Motion to Reverse and Remand the Administrative Decision* (the "Response"), (Doc. 16), filed October 23, 2017; and Plaintiff's *Reply in Support of Plaintiff's Motion to Reverse and Remand for a Rehearing* (the "Reply"), (Doc. 20), filed November 30, 2017.

    Mr. Snowden applied for disability insurance benefits ("DIB") on September 24, 2013, and for supplemental security income ("SSI") on October 4, 2013. (Administrative Record "AR" 96-97). In both applications, Mr. Snowden alleged disability beginning September 26, 2013, due to epilepsy, asthma, memory problems, a learning disability, and migraines. (AR 74, 85). Mr. Snowden's applications were denied initially on December 16, 2013, (AR 84, 95), and upon reconsideration on May 30, 2014, (AR 109, 121). Mr. Snowden requested a hearing before an administrative law judge ("ALJ"), (AR 139), which was granted, and a hearing was held before ALJ Liliian Richter on

November 18, 2015. Mr. Snowden appeared and testified at the hearing, along with Judith Beard, an impartial vocational expert ("VE"). (AR 39). Mr. Snowden was represented at the hearing by his current counsel, Michael Armstrong. *Id.*

On January 6, 2016, ALJ Richter issued her decision finding Mr. Snowden not disabled at any time between his alleged onset date through the date of the decision. (AR 33). Mr. Snowden requested review by the Appeals Council, which was denied, (AR 1-6), making the ALJ's decision the Commissioner's final decision for purposes of this appeal.

Mr. Snowden has appealed the ALJ's decision, arguing she committed reversible error by: (1) failing to incorporate medical opinions into Mr. Snowden's RFC; (2) failing to follow the correct legal standard in rejecting two medical opinions; (3) using the term "occasional" in her question to the VE; (4) relying on the VE's unreliable testimony; and (5) failing to follow the correct legal standard for when the VE identifies jobs in low numbers. (Doc. 16 at 1-2). The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because the ALJ followed the correct legal standards and supported her decision with substantial evidence, Mr. Snowden's Motion should be **DENIED**.

## I. Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008); *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir.

1992). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The ALJ's failure to apply the correct legal standards or demonstrate that he has done so is grounds for reversal. *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which is generally the ALJ's decision, rather than the Appeals Council's denial of review. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting" it. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from

being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.      Applicable Law and Sequential Evaluation Process

For purposes of SSI and DIB, a claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2015), 42 U.S.C. § 1382c(a)(3)(A) (2004); 20 C.F.R. §§ 404.1505(a), 416.905(a). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920.

At the first four steps of the SEP, the claimant bears the burden of showing: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); *see Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation process. At step five the Commissioner must show the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

4

### III.    Background

Mr. Snowden applied for DIB and SSI alleging epilepsy, asthma, memory

problems, a learning disability, and migraines affected his ability to work. (AR 96-97). At

step one, the ALJ determined Mr. Snowden had not engaged in substantial gainful

activity since his alleged onset date. (AR 18). At step two, the ALJ found Mr. Snowden

has the following severe impairments: seizure disorder, adjustment disorder with

depressed mood and anxiety, mild neurocognitive disorder due to epilepsy, and

generalized anxiety disorder. *Id.* At step three, the ALJ concluded none of Mr.

Snowden's impairments, either singly or in combination, met or equaled the severity of a

Listing impairment. (AR 19-21).

The ALJ then found Mr. Snowden has the RFC to perform a full range of work at

all exertional levels with several non-exertional limitations. Mr. Snowden can: frequently

balance and climb ramps and stairs, but never ladders, ropes, or scaffolds; never be

exposed to unprotected heights, moving mechanical parts, or other work hazards; and

never operate a motor vehicle. (AR 21). Further, he should avoid concentrated

exposure to dust, odors, fumes, and other pulmonary irritants. *Id.* Finally, Mr. Snowden

can: perform simple, routine, repetitive work; have occasional contact with supervisors,

coworkers, and the public; tolerate few changes in the routine work setting; and meet

end of day goals, though he cannot perform at production pace. *Id.*

The ALJ based Mr. Snowden's RFC on her evaluation of Mr. Snowden's medical

records and opinion evidence in the record. First, the ALJ discussed Mr. Snowden's

history of epilepsy. (AR 22-24). The ALJ then discussed several treatment records and

opinions, including those from Certified Nurse Practitioner ("CNP") Jimmy Calzado, (AR

24-26), Mr. Snowden's psychiatrist, Yvonne Hall, M.D., (AR 28), and social workers Amy Chapman and Greg Bussey, (AR 28-29). After treating Mr. Snowden in 2014, CNP Calzado opined that Mr. Snowden's impairments were marked in several areas and were severe enough to qualify as Listing-level impairments. (AR 419-23). Ultimately, the ALJ gave CNP Calzado's opinion little weight because his opinion was not supported by other evidence in the record, his own treatment notes, or the opinion itself. (AR 16).

Next, the ALJ discussed the opinion of Dr. Hall, Mr. Snowden's psychiatrist. Contrary to CNP Calzado, Dr. Hall found that Mr. Snowden had slight to moderate limitations which did not rise to Listing-level severity. (AR 683-86). The ALJ gave this opinion significant weight, as it was supported by the evidence of record and Mr. Snowden's testimony at the hearing. (AR 28). The ALJ found that Mr. Snowden's RFC accorded with the mental health limitations found by Dr. Hall. *Id.*

Finally, the ALJ discussed Ms. Chapman and Mr. Bussey's opinions. Ms. Chapman indicated that Mr. Snowden had a marked limitation in understanding and remembering detailed instructions, but otherwise his limitations were slight to moderate. (AR 688-89). The ALJ concluded Ms. Chapman's opinion was consistent with Dr. Hall's, and gave it significant weight. (AR 28). Mr. Bussey, on the other hand, stated that Mr. Snowden had multiple marked limitations. (AR 690-91). Mr. Bussey also thought Mr. Snowden met Listing-level impairments. (AR 692-93). The ALJ stated he had reviewed Mr. Bussey's treatment notes and found "little in them to support his opinion." (AR 29). Further, the ALJ noted Mr. Bussey's opinion was inconsistent with Dr. Hall's and Ms. Chapman's. (AR 29). The ALJ therefore assigned Mr. Bussey's opinion little weight.

Proceeding to step four, the ALJ determined Mr. Snowden cannot perform his past relevant work. (AR 32). However, at step five, the ALJ concluded Mr. Snowden can perform other work existing in significant numbers in the national economy. *Id.* At the hearing, the ALJ asked the VE to assume a hypothetical individual with Mr. Snowden's RFC, including a limitation to "occasional" interaction with supervisors, coworkers, and members of the general public. (AR 69). The VE testified that Mr. Snowden can perform the jobs of housekeeper/cleaner, polisher, and garment sorter. (AR 33). The ALJ identified those jobs' numbers, respectively, as 30,000, 30,000, and 5,000, for a total of 65,000 jobs in the national economy. *Id.* Based on the VE's testimony, the ALJ held that Mr. Snowden was not disabled, and therefore was not entitled to either DIB or SSI. *Id.*

## IV.    Analysis

In his Motion, Mr. Snowden alleges that the ALJ: (1) erred by picking and choosing what portions of Dr. Hall and Ms. Chapman's opinions to incorporate into the RFC; (2) failed to apply the correct legal standard by discounting CNP Calzado's and Mr. Bussey's opinions for illegitimate reasons; (3) improperly used the word "occasional" to describe Mr. Snowden's interactional limitations; (4) inappropriately relied on the VE's testimony, which was not reliable; and (5) failed to perform an analysis under *Trimiar v. Sullivan*, 966 F.2d 1326, 1330-32 (10th Cir. 1992), which is required when an ALJ identifies a low number of jobs the claimant can perform. (Doc. 14 at 1-2). The Commissioner generally responds that the ALJ appropriately applied the correct legal standards and supported her decision with substantial evidence. (Doc. 16). More specific counterarguments will be discussed in turn.

a. _Whether the ALJ followed the correct legal standard in incorporating Dr. Hall's and Ms. Champan's opinions_

First, Mr. Snowden argues the ALJ erred because she did not incorporate all of Dr. Hall's and Ms. Chapman's opinions into Mr. Snowden's RFC and failed to explain why. (Doc. 14 at 15-17). Specifically, Mr. Snowden states his RFC conflicts with their opinions that he is moderately limited in his ability to sustain an ordinary routine without special supervision and perform activities within a schedule. _Id._ at 17. In response, the Commissioner argues the ALJ adequately incorporated the opinions by limiting Mr. Snowden to a "very restrictive mental residual functional capacity" and limiting Mr. Snowden to simple work. (Doc. 16 at 11, 13).

ALJs are required to evaluate and weigh every medical opinion in the record. 20 C.F.R. §§ 404.1527(c), 416.927(c). While an ALJ is not required to discuss every piece of medical evidence, the ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." _Clifton v. Chater_, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Put differently, an ALJ may not "pick and choose through an uncontradicted medical opinion, taking only those parts that are favorable to a finding of nondisability." _Haga_, 482 F.3d at 1208. In _Haga_, an examining physician noted a claimant had moderate limitations in seven areas. _Id._ at 1207. Although the ALJ incorporated three of those impairments into the claimant's RFC, the ALJ left the other four limitations out. _Id._ The Tenth Circuit Court of Appeals reversed and remanded for the ALJ to explain why he rejected the missing limitations. _Id._ at 1208. Similarly, in _Frantz v. Astrue_, the ALJ adopted some but not all of a claimant's moderate limitations without explanation, and the Tenth Circuit reversed. 509 F.3d 1299, 1302-03 (10th Cir. 2007).

In this case, Dr. Hall and Ms. Chapman indicated that Mr. Snowden's limitations are slightly to moderately severe. While Dr. Hall found mostly slight with some moderate limitations, (AR 683-84), Ms. Chapman found mostly moderate severity limitations, including in sustaining an ordinary routine without special supervision, performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances, (AR 688). Moreover, Ms. Chapman stated Mr. Snowden is markedly impaired in his ability to understand and remember detailed instructions, commenting "[Mr. Snowden] may have difficulty with remembering work like procedures." (AR 688).

As discussed, the ALJ found these opinions consistent and gave them significant weight. (AR 28). In the RFC, the ALJ found Mr. Snowden capable of meeting end-of-day goals, having occasional contact with others, and performing only simple, routine, and repetitive work. (AR 21). Mr. Snowden argues the RFC inherently conflicts with Dr. Hall's and Ms. Chapman's opinions outlined above; therefore, he argues, the ALJ "rejected" them without explanation as the ALJs did in *Haga* and *Frantz*. (Doc. 14 at 16-17). However, this case is significantly different. In *Haga* and *Frantz*, the ALJs incorporated some limitations and ignored others outright without explanation. *See Haga*, 482 F.3d at 1207; *Frantz*, 509 F.3d at 1303; *see also Mitchell v. Colvin*, 2016 WL 10257496, at *6 (D.N.M. May 10, 2016) (ALJ's finding that claimant was "fully capable" of understanding and performing simple work and instructions failed to incorporate physician's opinion that claimant was "moderately to markedly" impaired in her ability to carry out instructions). Here, the ALJ incorporated each of Mr. Snowden's limitations. First, the ALJ accounted for Mr. Snowden's limitation in sustaining an ordinary routine

by limiting him to meeting end-of-day goals rather than performing at a production pace. Likewise, the ALJ incorporated Mr. Snowden's marked limitation in understanding and performing detailed instructions by limiting him to simple instructions and tasks. (AR 21). The ALJ did not ignore or fail to incorporate Dr. Hall's or Ms. Chapman's opinions without explanation, as the ALJs did in *Haga* and *Frantz*. The Court therefore finds the ALJ followed the correct legal standard.

Mr. Snowden argues that "[p]roperly taking [Mr. Snowden's] limitations into account would have resulted in a narrower RFC." (Doc. 14 at 17). Mr. Snowden appears to disagree with how the ALJ incorporated Mr. Snowden's limitations and asks the Court to reverse because the ALJ did not properly consider the evidence. However, the Court may not re-weigh the evidence nor substitute its judgment for the Commissioner's. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. As discussed, the ALJ incorporated Dr. Hall and Ms. Chapman's opinions into the RFC, and the Court may not reverse based on its own interpretation of those opinions.

### b. *Whether the ALJ followed the correct legal standard in rejecting CNP Calzado's and Mr. Bussey's opinions*

Second, Mr. Snowden argues the ALJ failed to follow the correct legal standard when she rejected the opinions of CNP Calzado and Mr. Bussey. In particular, Mr. Snowden claims the ALJ's reasons are too vague and conclusory to meaningfully review. (Doc. 14 at 19-20). The Commissioner responds that the ALJ rejected the opinions for good reasons that are supported by the record, and a more detailed explanation is not required. (Doc. 16 at 13-15).

As discussed, ALJs are required to evaluate and weigh every medical opinion in the record. 20 C.F.R. §§ 404.1527(c), 416.927(c). In weighing an opinion, ALJs must

consider six factors: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) whether and to what extent the opinion is supported by relevant evidence; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is offered by a specialist; and (6) any other relevant factor brought to the ALJ's attention. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6); *see Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003). ALJs need not expressly discuss each of the six factors. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). However, the ALJ must give "good reasons" that are "sufficiently specific" to make clear to subsequent reviewers the weight assigned to an opinion and the reasons for that weight. *Watkins*, 350 F.3d at 1200 (citation and quotation omitted).

An ALJ's reasoning is not sufficiently specific if she merely states an opinion is unsupported by or inconsistent with the medical evidence without further explanation. *Langley*, 373 F.3d at 1122-23; *see Cagle v. Astrue*, 266 Fed. Appx. 788, 792-793 (10th Cir. 2008) (unpublished); *Wise v. Barnhart*, 129 Fed. Appx. 443, 447 (10th Cir. 2005) (unpublished); *King v. Barnhart*, 114 Fed. Appx. 968, 972 (10th Cir. 2004) (unpublished). In *Langley*, the ALJ rejected two medical opinions as unsupported by medical evidence. *Langley*, 373 F.3d at 1120, 1122 (rejecting one doctor's opinion as "'wholly unsupported'" by the record and a second doctor's as "'not supported'" by the record). However, the ALJ did not explain how the opinions were unsupported or inconsistent with the medical record, and the opinions were not clearly unsupported by or contradictory to the record. *Id.* at 1121-22 (stating there were "no obvious inconsistencies" between a physician's opinion and the record). The Tenth Circuit reversed, explaining the ALJ's reasoning did not permit meaningful review. *Id.* at 1123

("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings.").

Here, the ALJ first considered CNP Calzado's records and findings, for instance that Mr. Snowden complained of being easily angered and irritated. (AR 24-26). CNP Calzado's records summarize Mr. Snowden's self-reporting and document rational, relevant thoughts, "adequate" concentration, and "good" memory. (AR 405-14). The ALJ also recognized CNP Calzado's recommendations that Mr. Snowden avoid work requiring him to make judgments, influence others, and direct, control, or plan activities for others. (AR 26, 421). CNP Calzado indicated Mr. Snowden has several marked limitations in areas of understanding and memory, concentration and persistence, and adaption to the workplace. (AR 419-420). CNP Calzado also found that Mr. Snowden's impairments were severe enough to medically equal Listing impairments. *Id.*

As for Mr. Bussey, he and Mr. Snowden met several times between March and October, 2015. (AR 469-56). Generally, Mr. Snowden presented with a blunt, flat affect, and neutral mood, and expressed anxiety, anger, and frustration over being out of work and waiting on his disability applications. *See id.* Mr. Bussey counseled Mr. Snowden on acceptance strategies given his "neurological concerns may be irremediable." (AR 484). Ultimately, Mr. Bussey opined Mr. Snowden has marked limitations in understanding and memory, some marked but mostly moderate impairments in concentration and persistence, moderate limitations in social interaction, and moderate or marked limitations in adaptation. (AR 690-91).

The ALJ gave both CNP Calzado and Mr. Bussey's opinions little weight. (AR 26,

29). Regarding CNP Calzado, the ALJ stated, in full:

> I have given little weight to Mr. Calzado's opinions because I do not find them to be supported by the additional evidence of record. The level of severity that Mr. Calzado assigns to [Mr. Snowden's] impairments is not supported in the treatment records. The only notation Mr. Calzado made on his assessment to support his opinion was that [Mr. Snowden] was 'currently undergoing psychiatric care for depression.' I do not find that this adequately explains the basis for his opinion.

*Id.* The ALJ gave similar reasons for discounting Mr. Bussey's opinion, stating:

> I have given little weight to Mr. Bussey's opinions because I do not find them to be supported by the additional evidence of record. I have reviewed Mr. Bussey's treatment notes and I find little in them to support his opinion. I further note that Mr. Bussey's opinion is not consistent with other, more compelling opinions in the file, including that of Dr. Hall and Ms. Chapman.

*Id.*

Mr. Snowden faults the ALJ's reasoning as too conclusory and vague to permit

meaningful review. (Doc. 14 at 19). While the Court agrees a more specific analysis

would have been helpful, the Court can still follow the ALJ's reasoning. *See Mounts v.*

*Astrue*, Fed. Appx. 860, 866 (10th Cir. 2012) (unpublished) (stating the ALJ should

make clear the reasons for the weight assigned to opinions, or "otherwise ensure" the

decision allows reviewers to "follow the adjudicator's reasoning"). As discussed, Dr. Hall

and Ms. Chapman found that Mr. Snowden did not meet Listing impairments, while CNP

Calzado and Mr. Bussey did, which is an obvious inconsistency. This shows that CNP

Clazado's and Mr. Bussey's opinions were not supported by other opinions that the ALJ

found more compelling. Second, CNP Calzado's records document adequate attention

and good memory, which is inconsistent with marked impairments in those areas, and

Mr. Bussey's records do not contain evidence of marked interactional, attention, or

memory deficits. Furthermore, the ALJ specifically pointed to the lack of support CNP Calzado cited in support of his opinions and that Mr. Bussey's opinion contradicted Dr. Hall's and Ms. Chapman's opinions. This case is unlike *Langley*, where the medical opinions were not clearly contradicted by other evidence. *See Langley*, 373 F.3d at 1121-22. In this case, the ALJ gave good reasons that are supported by the record; therefore, the Court finds the ALJ did not err in rejecting CNP Calzado's and Mr. Bussey's opinions.

       *c.*   *Whether the ALJ improperly used the word "occasional" to describe Mr. Snowden's mental limitations*

Mr. Snowden's third argument is that the ALJ improperly used the term "occasional" in her question to the VE and in the RFC. (Doc. 14 at 20-21). While the ALJ determined Mr. Snowden is capable of "occasional" contact with the public, coworkers, and supervisors, (AR 21), Mr. Snowden contends the term "occasional" may only be used to describe strength-related job requirements. (Doc. 14 at 21). The Commissioner denies that the term is limited to strength requirements. (Doc. 16 at 15-16).

Social Security Rulings ("SSRs") define "occasional" as "occurring from very little up to one-third of the time," and "no more than 2 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983) (unpublished); SSR 96-9p, 1996 WL 374185, at *3 (July 2, 1996) (unpublished). "Occasional" is often used in conjunction with physical limitations like lifting and carrying, pushing and pulling, and postural limitations. *See* SSR 96-9p, 1996 WL 374185, at *6. However, nothing in the statutes, regulations, or DOT expressly limits the term to those contexts. On the contrary, terms like "frequent" and "occasional" have long been used to describe social or mental limitations. *See, e.g.*, *Hackett v. Barnhart*, 395 F.3d 1168, 1175-76 (10th Cir. 2005) (claimant

limited to "occasional interaction with coworkers" and no direct public contact); *Chavez v. Colvin*, 654 Fed. Appx. 374, 375 (10th Cir. 2016) (unpublished) (limiting claimant to "no interaction with the public, and only occasional and superficial contact with co-workers"); *Davison v. Colvin*, 596 Fed. Appx. 675, 680 (10th Cir. 2014) (unpublished) (limiting claimant to "occasional" interaction with supervisors and co-workers, and "no work interaction with the public").

Given this background, the Court finds no error in expressing Mr. Snowden as capable of "occasional" interaction with others. "Occasional" is clearly defined, and Mr. Snowden has not provided any authority limiting its application to strength-related job requirements. Accordingly, the Court finds no error in the ALJ's description of Mr. Snowden's mental limitations.

> ### d. <u>Whether the VE's testimony was reliable</u>

Fourth, Mr. Snowden argues the ALJ's findings are not supported by substantial evidence because she relied on the VE's unreliable testimony. (Doc. 14 at 21-22). Mr. Snowden asserts the VE's testimony was unreliable because the number of jobs that the VE testified existed in the national economy in this case was significantly lower than the number of jobs other VEs have testified to in other cases. (Doc. 14 at 22-23). Mr. Snowden contends the difference renders the VE's testimony unreliable. The Commissioner answers that VEs must testify to case-specific RFCs, which explains the differences between cases. (Doc. 16 at 17-18).

At step five of the SEP, the Commissioner must show the claimant can perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261. Like all findings, this must be supported by substantial evidence. *Haddock v. Apfel*, 196 F.3d 1084, 1089 (10th Cir.

1999). However, it is unclear "[w]hat the agency's regulations and rulings require an ALJ to do, or even allow an ALJ to do, to produce substantial vocational evidence at step five." *Id.* At the very least, the ALJ may relate a claimant's impairments to a VE and ask the VE what jobs the claimant can perform. *Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th Cir. 1996). The VE's answer is acceptable as substantial evidence. *Id.* Moreover, the ALJ may take "administrative notice of reliable job information available from various governmental and other publications," including the DOT and the Occupational Outlook Handbook ("OOH"), which is published by the Bureau of Labor Statistics. 20 C.F.R. §§ 404.1566(d), 416.966(d).

At Mr. Snowden's hearing, the ALJ complied with *Winfrey* by relating Mr. Snowden's impairments to the VE and asking what jobs he can perform. (AR 68-71). The VE answered Mr. Snowden can perform the following jobs: housekeeping cleaner, with approximately 140,000 positions available under the DOT definition and 4,000,000 positions according to the OOH; cleaner polisher, with 30,000 jobs at the DOT level; and garment sorter, with 5,000 positions nationally, though the VE did not specify which publication she relied on for this job. *Id.* In her decision, the ALJ relied on the VE's testimony as substantial evidence that Mr. Snowden can perform work existing in significant numbers in the national economy. (AR 33).

Mr. Snowden states the VE's testimony is unreliable because her testimony differs from other VEs' testimony in other cases, for instance where VEs estimated there were 800,000 or 370,000 housekeeper cleaner jobs. (Doc. 14 at 22). However, the ALJ and VE complied with Tenth Circuit precedent and the relevant regulations. The ALJ relayed Mr. Snowden's impairments to the VE, who answered what jobs he can perform

based on the approved publications. *See* 20 C.F.R. §§ 404.1566(d), 416.966(d).

Accordingly, although the VE's testimony in this case differed from other VEs' testimony, the Court finds no good reason to reverse and remand on this issue. Mr. Snowden states that he recognizes he should not be allowed to "cherry-pick" numbers from other cases and that the number of available jobs changes over time. (Doc. 14 at 22-23). In addition, as the Commissioner points out, VEs testify regarding particular RFCs, so a VE's testimony may differ regarding the same job depending on the claimant's RFC. In the end, the ALJ and VE complied with applicable law; therefore the Court finds the ALJ's findings at step five are supported by substantial evidence.

### e. *Whether the ALJ erred by failing to perform a* Trimiar *analysis*

Finally, Mr. Snowden alleges the ALJ erred by failing to conduct an analysis under *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992). In *Trimiar*, the Tenth Circuit listed several factors an ALJ should consider when the number of jobs a claimant can perform is extremely low. *Trimiar*, 966 F.2d at 1330. Mr. Snowden argues the number of jobs the ALJ identified, 65,000, is not a "significant" amount as a matter of law, therefore she should have analyzed the *Trimiar* factors, and her failure to do so was error. (Doc. 14 at 24-26). The Commissioner counters that the VE actually identified 175,000 jobs. (Doc. 16 at 19-20). Further, the Commissioner argues that neither 175,000 nor 65,000 jobs are low enough to trigger a *Trimiar* analysis. (Doc. 16 at 19-20).

Again, in order to prove a claimant is not entitled to benefits, the Commissioner must show that the claimant can perform work in the national economy. Work exists in the national economy when it "exists in significant numbers either in the region where [the claimant] lives or in several other regions of the country." 20 C.F.R. §§ 404.1566; 416.966; *see Trimiar*, 966 F.2d at 1029. Several factors influence whether jobs exist in

"significant numbers," including the level of the claimant's disability, the reliability of the VE's testimony, the distance the claimant can travel to perform other jobs, the isolated nature of the jobs, and the types and availability of those jobs. *Id.* at 1330 (quoting *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988)).

In *Trimiar*, the Tenth Circuit found that the ALJ considered the appropriate factors in deciding that 650 to 900 jobs was a significant number in the region the claimant lived. *Id.* at 1330-31. Subsequently, the Tenth Circuit has explained that *Trimiar* does not require the ALJ to explicitly perform a multi-factor analysis when considering national jobs or when the number of relevant jobs is much larger than the 650 to 900 at issue in *Trimiar*. *See Raymond v. Astrue*, 621 F.3d 1269, 1274 n.2 (10th Cir. 2009). (unpublished). Finally, in *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004), the Tenth Circuit recognized that harmless error may apply when the ALJ fails to discuss the *Trimiar* factors. The court stated it might have found harmless error if the number of jobs available was "considerably greater" than the 100 jobs the VE testified the claimant could perform. *Allen*, 357 F.3d at 1145. In an unpublished decision, the Tenth Circuit has held that 152,000 is a significant number of jobs in the national economy. *Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) (unpublished) (finding harmless error where VE testified claimant could perform 152,000 jobs in the national economy).

In this case, the ALJ asked the VE several questions in order to determine whether Mr. Snowden could perform work existing in the national economy. First, the ALJ asked the VE how Mr. Snowden's seizure disorder would affect his ability to find employment. (AR 66-67). The ALJ also described Mr. Snowden's limitations to the VE and asked whether a person with those limitations could work. (AR 68-71). Ultimately,

the VE testified that an individual with Mr. Snowden's impairments could perform the jobs of housekeeping cleaner, at 140,000 positions nationally, cleaner polisher, at 30,000 positions nationally, and garment sorter, at 5,000 positions nationally, for a total of 175,000 jobs. *Id.* In her decision, the ALJ incorrectly quoted the VE as testifying that only 30,000 housekeeping cleaner positions exist nationally, reducing the total to 65,000. (AR 33). The ALJ then found the VE's testimony consistent with the Dictionary of Occupational Titles ("DOT") and found that Mr. Snowden can perform work which exists in significant numbers in the national economy. *Id.* The ALJ did not explicitly discuss the *Trimiar* factors.

To reiterate, Mr. Snowden argues the ALJ committed legal error by not discussing the *Trimiar* factors in analyzing whether 65,000 is a significant number of jobs in the national economy. (Doc. 14 at 25-26). However, the Court cannot ignore that the VE actually testified that an individual with Mr. Snowden's impairments can perform a total of 175,000 jobs available nationally. (AR 68-71). As discussed, Tenth Circuit has previously held that 152,000 jobs is a significant number of jobs. *Stokes*, 744 Fed. Appx. at 684. Because the VE testified Mr. Snowden can perform more than 152,000 jobs, the Court finds that Mr. Snowden can perform a significant number of jobs in the national economy. Therefore, any error in failing to discuss the *Trimiar* factors was harmless.

## V.    Conclusion

For the foregoing reasons, the Court finds that the ALJ followed the correct legal standards in incorporating and rejecting medical opinions. Further, the ALJ did not err in using the word "occasional" to describe Mr. Snowden's mental impairments. Finally, the

Court finds that the ALJ's analysis at step five was legally sound and supported by substantial evidence. **IT IS THEREFORE ORDERED** that Mr. Snowden's *Motion to Reverse and Remand for a Rehearing with Supporting Memorandum*, (Doc. 14), is **DENIED**.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE